IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| DEREK NOSKER and | ) | |
| CHARLENE NOSKER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 06-0286-CV-W-GAF |
| | ) | |
| GILL BROS. TRUCKING, et al., | ) | |
| | ) | |
| Defendants | ) | |

## ORDER

Presently before the Court is Defendants Harninder S. Gill, Charan S. Gill, Harjinder S. Gill, Pakhar S. Gill, and Gurdial S. Gill's (collectively "the Gills") Renewed Motion to Dismiss for Lack of Personal Jurisdiction filed pursuant to Fed. R. Civ. P. 12(b)(2) ("Rule 12(b)(2)"). (Doc. #141). The Gills argue they are not subject to jurisdiction in the state of Missouri because they have not committed any of the acts enumerated in Missouri's long-arm statute, Mo. Rev. Stat. § 506.500, and because the exercise of personal jurisdiction over them does not comport with due process. (Doc. #88). Plaintiffs Derek Nosker and Charlene Nosker (collectively "the Noskers") oppose the Gills' Motion, arguing personal jurisdiction over the Gills is proper because the corporations the Gills own, Gill Bros. Trucking and GBTI, Inc., should be disregarded under a corporate veil-piercing theory due to the Gills' conduct. (Doc. #150). For the following reasons, the Gills' Motion is GRANTED as to the five Gills and Gill Bros. Trucking.

## DISCUSSION

**I.    Facts**

1

*1. The Injury*

At approximately 11:45 a.m. on August 14, 2005, Defendant Donald Shearer ("Shearer"), an employee of GBTI, Inc., was driving a 2003 Freightliner semi-tractor with one trailer westbound on I-70 near mile marker 166 in Montgomery County, Missouri. (Second Am. Compl. ¶13; Harninder Gill Dep. 20:2). It was raining and the roadway was wet. (Second Am. Compl. ¶16). Derek Nosker was driving a 2003 Pontiac westbound on I-70 and applied the car's brakes to avoid a collision. *Id*. at ¶17. Shearer rear-ended the 2003 Pontiac and caused it to collide with other stopped vehicles and come to rest in the interstate median. *Id*. at ¶18. The collision severely injured the Noskers. *Id*. at ¶20.

*2. GBTI, Inc.*

The Gills are the sole shareholders of GBTI, Inc. and residents of California. *Id*. at ¶5. GBTI, Inc. is incorporated under the laws of California. *Id*. at ¶¶2, 4. The five Gills serve as the board of directors for GBTI, Inc. (Kelsey Rep. p.3). According to the Noskers' financial analyst, at the time of its incorporation in 2004, GBTI, Inc. reported 1000 shares of common stock at $1.00 per share for a contributed capital value of $1000. *Id*. p.5. GBTI, Inc. was unable to commence operations based on its initial paid-in capital and borrowed between $200,000 and $300,000 from Gill Bros. Trucking for start up. (Harjinder Gill Dep. 22:2-12; Harninder Gill Dep. 77:24 to 78:23). GBTI, Inc. repaid the loans. (Harjinder Gill Dep. 22:20-21; Harninder Gill Dep. 78:10-13).

GBTI, Inc. leases trucks from Gill Bros. Trucking. (Second Am. Compl. ¶9). GBTI, Inc. has also purchased its own equipment when economically advantageous to do so. (Harjinder Gill Dep. 37:20 to 38:6). The corporation maintains a $1,000,000 insurance policy on each vehicle it leases from Gill Bros. Trucking. (Doc. #150, p.5). In addition, GBTI, Inc. maintains a commercial general liability insurance policy. (Harninder Gill Dep. 134:22 to 136:10).

The Nosker's financial analyst avers GBTI, Inc. and Gill Bros. Trucking "did not properly maintain minutes of the directors meetings" and have not turned over any minutes from GBTI, Inc's annual board of directors meetings. (Kelsey Rep. p.6). GBTI, Inc.'s board of directors meets at least every quarter, but does not record minutes. (Harninder Gill Dep. 26:15-22). The meetings have, however, resulted in numerous Directors Writings.[1] (Doc. #157, Ex. F). No financial statements exist for GBTI, Inc. but GBTI, Inc.'s CPA prepares certified tax returns at appropriate times. (Harninder Gill Dep., Jan. 2007, 27; Doc. #157, Ex. D).

GBTI, Inc. has made a loan to Amarjit Gill, which the Gills contend Amarjit repaid. (Harjinder Gill Dep. 45:12-25). As of June 30, 2006, GBTI, Inc.'s accounts receivable indicated Amarjit still owed $71, 825. (Kelsey Rep. p.6). The Gills have not produced any promissory note for this loan. *Id.* GBTI, Inc. also made a series of undocumented loans to Pakhar Gill, one of GBTI, Inc.'s shareholders. (Harninder Gill Dep. 59:7 to 62:3). In 2003, Sarbjit Gill, an employee rather than shareholder of GBTI, Inc., signed a lease for a Freightliner tractor on behalf of GBTI, Inc. (Kelsey Rep. p.6).

GBTI, Inc. entered a lease agreement with Moola Gill Farms Partnership in January, 2005. *Id*. at p.7; Harninder Gill Dep. 19:19 to 20:9; 27:3 to 28:25. The Gills investigated to determine the fair market value of the lease. (Harninder Gill Dep. 27:23 to 28:25). GBTI, Inc.'s lease payments to Moola Gill farms were somewhat irregular based on available cash flow. *Id.* at 38:3 to 40:20. The Gills are the five partners of Moola Gill Farms. (Kelsey Rep. p.7).

GBTI, Inc. has made undocumented loans to Moola Gill Farms Partnership to help harvest grape crops. (Harninder Gill Dep. 32:23 to 35:20). Harninder Gill avers Moola Gill Farms repaid

---

[1]Similar Directors Writings exist for Gill Bros. Trucking. (Doc. #157, Ex. G).

3

all the loans and the Noskers do not suggest otherwise. *Id*. GBTI, Inc. has also made donations to the Gills' church from its corporate checking account.[2] *Id*. 115:2 to 117:25.

   3.   *Gill Bros. Trucking*

The Gills are the sole shareholders of Gill Bros. Trucking. (Second Am. Compl. at ¶5). Gill Bros. Trucking is incorporated under the laws of California. *Id*. at ¶¶2, 4. The five Gills serve as the board of directors for Gill Bros. Trucking, Inc. (Kelsey Rep. p.3). Gill Bros. Trucking leases trucks to GBTI, Inc. and maintains a Commercial General Liability insurance policy. (Second Am. Compl. ¶9; Harninder Gill Dep. 134:22 to 136:10).

Gill Bros. Trucking has produced no minutes for directors' meetings and has produced minutes from annual board of directors meetings through only 2004. (Kelsey Rep. p.6). The Noskers' financial analyst states tax returns reveal Harninder Gill received compensation from Gill Bros. Trucking in 2005, although Harninder acknowledged Gill Bros. Trucking had no day-to-day operations that year. *Id*. at p.7.

Gill Bros. Trucking entered a lease agreement with Moola Gill Farms Partnership on October 1, 1993. *Id*.; Harninder Gill Dep. 19:19 to 20:9; 27:3 to 28:25. Under its lease, Gill Bros. Trucking paid rent to Moola Gill Farms monthly or every other month, depending on cash flow. (Harninder Gill Dep. at 23:20 to 24:8).

Gill Bros. Trucking has advanced undocumented loans to another Gill entity, Service Express. *Id*. at 124:24 to 128:5. Gill Bros. Trucking also made a total of $250,000 in dividend payments in 2006. (Kelsey Rep. pp.9-10). In addition, Gill Bros. Trucking paid a $20,000 bonus to each of its shareholders in September 2006. *Id*. at 10. In 2002 or 2003, before the accident at issue, Gill Bros.

---

[2]The record does not reveal the amount of these donations.

4

Trucking also authorized and issued a shareholder dividend based upon the board of directors' determination Gill Bros. Trucking had sufficient capital and paid relatively low salaries. (Harninder Gill Dep. 47:16 to 49:1).

### 4. *The Lawsuit*

The Noskers filed this lawsuit against Gill Bros. Trucking, Shearer, and three John Doe defendants in the Circuit Court of Jackson County, Missouri. (Doc. #1, Att. #7). They subsequently amended the Petition to add GTBI, Inc. (Doc. #1, Att. #1). On April 5, 2006, the defendants filed a notice of removal to federal court. (Doc. #1, Attach. #5). The Noskers then filed their Second Amended Complaint adding the Gills as defendants. (Doc. #46). In response, the Gills filed the instant Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. #141). Though not included in the Gills' prayer for relief, their brief in support of their Motion repeatedly notes there are no grounds for liability against Gill Bros. Trucking. (Doc. #141, p.3 n.3, p.14 n.13). Since the Noskers' jurisdictional discovery appears to have included Gill Bros. Trucking in its scope and the Gills have raised the issue, the Court will also consider whether it has personal jurisdiction over that entity.

## II. Standard

When a movant supplements a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction with affidavits and depositions, a district court in the Eighth Circuit treats the motion as a motion for summary judgment as to jurisdiction. *Radaszewski v. Telecom Corp.*, 981 F.2d 305, 309 (8th Cir. 1992). The court must determine whether the plaintiff can identify any disputed issue of material fact with regard to jurisdiction over the party in question. *Id.* Genuine issues of material fact remain if sufficient evidence exists for a reasonable jury to find in favor of the non-moving

party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The court proceeds to determine whether the movant is entitled to judgment as a matter of law on the record before it, examining the facts in the light most favorable to the plaintiff and granting him all reasonable inferences from the facts. *Id*. at 310.

Though a Rule 12(b)(2) motion to dismiss places the burden on the nonmoving party to establish jurisdiction, *see Mountaire Feeds, Inc. v. Argo Impex, S.A.*, 677 F.2d 651, 653 (8th Cir. 1982), where the court considers evidence beyond the pleadings after a plaintiff has pled a prima facie case of jurisdiction, the burden shifts to the moving party to demonstrate no personal jurisdiction exists. *Radaszewski*, 981 F.2d at 309-10 *citing Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d1211, 1215 (8th Cir. 1977). Subject to federal due-process limitations, a federal court applies the law of the state in which the federal court sits to determine whether personal jurisdiction exists over the parties. *See Scullin Steel Co. v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309, 311 (8th Cir. 1982).

**III. Analysis**

The Noskers contend personal jurisdiction exists over the Gills and Gill Bros. Trucking because of GBTI, Inc.'s association to the Gills and Gill Bros. Trucking.[3] The Court will therefore consider whether the Noskers' jurisdictional discovery has generated sufficient supportable evidence for a reasonable jury to find Gill Bros. Trucking and the Gills vicariously liable for the actions of Shearer and GBTI, Inc. and thus subject to personal jurisdiction in this action.[4]

---

[3]At this stage in the litigation, the parties do not dispute Shearer's actions are attributable to GBTI, Inc. through respondeat superior principles.

[4]The same law which would subject the Gills and Gill Bros. Trucking to personal jurisdiction in this case also governs questions as to their substantive liability, making the summary judgment standard especially apt for considering the Gills' Motion. *See Radaszewski*,

The Noskers' advocate piercing GBTI, Inc.'s corporate veil to justify this Court's assertion of personal jurisdiction over the Gills and Gill Bros. Trucking. Under Missouri law,

> To "pierce the corporate veil," one must show;
>
> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and
>
> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and
>
> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Collet v. Am. Nat'l Stores, Inc.*, 708 S.W.2d 273, 284 (Mo. Ct. App. 1986) (citation omitted). "[O]perating [a corporation] without sufficient funds to meet obligations to those who must deal with it [is] circumstantial evidence tending to show either an improper purpose or reckless disregard for the rights of others." *Radaszewski*, 981 F.2d at 308, *quoting Consol. Sun Ray, Inc. v. Oppenstein*, 335 F.2d 801, 806-07 (8th Cir. 1964) *and citing Grote Meat Co. v. Goldenberg*, 735 S.W.2d 379 (Mo. Ct. App. 1987) *and May Dep't Stores Co. v. Union Elec. Light & Power Co.*, 107 S.W.2d 41, 55 (Mo. 1937).

In *Radaszewski*, the Eighth Circuit found a corporation undercapitalized in the accounting sense was adequately capitalized for purposes of the *Collet* test where the corporation maintained levels of insurance in compliance with applicable law. *Radaszewski*, 981 F.2d at 308, 311. Similarly, in this case, the parties agree GBTI, Inc.'s insurance coverage was sufficient under applicable law. GBTI, Inc. was therefore adequately capitalized under *Collet*.

---

981 F.2d at 307.

7

As supporting evidence relating to the domination and dishonesty or improper-conduct elements of the *Collet* test, the Noskers note GBTI, Inc. made undocumented loans to related entities and relatives; donated money to a religious organization; maintained a board of directors in common with Gill Bros. Trucking; and leased land and trucks from related entities. Tellingly, the Noskers cite not a single case demonstrating these activities individually or in combination approach the threshold of dishonesty, fraud, injustice, or violation of a duty or do not respect GBTI, Inc.'s corporate form. *See* Doc. #150. Neither do the Noskers persuasively distinguish this case from *Radaszewski* which weighs heavily against them on the facts here.

On the other hand, the Gills note GBTI, Inc. generally maintained a separate existence; typically collected its loans whether or not undocumented; held regular board meetings that generated documentation; paid taxes as a separate entity; made lawful contributions to charities; and complied with applicable federal insurance regulations. Even if GBTI, Inc.'s documentation and business practices are not in every way ideal based on generally accepted accounting principles, there is no evidence hinting at illegality or ill-motive under *Collet*.[5]

---

[5]The Court notes practices relating to Gill Bros. Trucking, including dividend and bonus payments, are irrelevant unless the Noskers can demonstrate GBTI, Inc. is underserving of its corporate moniker.

8

Based on the forgoing, the Court finds the Noskers' criticism of GBTI, Inc.'s corporate standing inadequate.[6]  As such, the Gills' Rule 12(b)(2) Motion to Dismiss is GRANTED with prejudice as to the Gills and Gill Bros. Trucking.[7]

**IT IS SO ORDERED.**

s/ Gary A. Fenner
GARY A. FENNER, JUDGE
UNITED STATES DISTRICT COURT

DATED:   January 11, 2008

---

[6]The Noskers have also failed to present persuasive evidence or argument to counter the Gills' assertion the causation element of the Collet test is unmet.  Even if GBTI, Inc. made undocumented loans, the Noskers do not appear to dispute evidence of usual repayment of those loans.  If repaid, such loans caused no damage to the Noskers.  Causation evidence is also lacking with regard to charitable gifts, sparse corporate minutes, and Sarbjit Gill's signing of the 2003 Freightliner lease on GBTI, Inc.'s behalf.  Finally, Gill Bros. Trucking's payment of a salary to Harninder Gill (Kelsey Rep. p.7) and GBTI, Inc.'s failure to make consistent lease payments under its lease with Moola Gill Farms, rather than causing harm to the Noskers, would aid their recovery against GBTI, Inc.

[7]The Noskers' Motion for Leave to File Sur-Reply (Doc. #159) is DENIED as MOOT.

9